Good morning, Your Honors. My name is Karen Bucher. I represent Christopher Baker. And with court's permission, I'd like to reserve five minutes for rebuttal. This is the case where the victim was raped during a home invasion robbery. And from the very beginning, Mr. Baker has always maintained his innocence. Prior to trial, he desperately wanted to have DNA testing to prove his innocence, but his trial counsel refused DNA testing, despite his pleas. And his argument is on appeal, is that his counsel was ineffective for not testing for DNA. Can I ask you, because I think there's a really critical question you write at the outset. Counsel gave reasons in the Marston hearing for why he did not get the DNA testing. So it wasn't like he was being completely arbitrary or capricious. You seem to be arguing for a per se rule that if a defendant wants DNA, that it's ineffective for defense counsel not to get it. Is that reading too much into your brief? No. Alone, that's not what I'm arguing, but I'm arguing there's other things that should have alerted counsel that perhaps he was correct. For example, the victim describes the rape as brutal. Lasted one to two minutes, she felt tearing pain, and she was bleeding. Defense counsel had in his procession a lab report that stated the victim's nucleated epithelial cells were excluded as possible source of the cells found on Baker's body. No, that's later. I'm talking about at the time that Mr. Baker wanted the DNA testing done. This was prior to the time. Oh, I'm sorry. Okay. So at the time before trial, the defense attorney has in his possession evidence that suggests that the victim's account of what happened may not be accurate. No. I believe it happened as she said, that my client wasn't a rapist. What he had, he had a lab report that after he was arrested, he was taken to the hospital, and he had the penile swaths taken, and they were tested. And they were tested against her cells. Her cells were not found on those swaths. And if he was truly the rapist, her cells would have been found on those swaths. And this is before trial. Correct, 1999. And before the issue of taking, getting a DNA test, the dispute between counsel and your client arises. That's the way that I read the record. Later on in 2006, there was further DNA testing, and that was separate. And in that testing, she was totally eliminated from the cell. So you're not suggesting the rule should be if the defendant wants DNA testing, and the defense counsel says, trial counsel says, you know what, I think that's a stupid idea, and here's why. You're not saying that it's ineffective not to follow the client's instructions. What you're saying is in this case, given the specific evidence that counsel had at the time of that decision, it was ineffective. Is that a better way of explaining the argument? And there's more. There was no blood found on his pubic or on penile swaths. There was no blood found in his underwear. Nothing. So there's no blood anywhere. After this brutal rape that just happened. This was all known at the time of trial. This report was 1999. The trial was in the year 2000. Okay. Okay. And with the fact that with that report, no blood, and his pleas. He says, I'm innocent, I didn't do it, I was at this party. Those three things together should alert counsel, well, maybe he's right, I should get the DNA testing. And there's case law to support that. Ninth Circuit case law, the case Jones v. Wood, where the defendant was convicted of killing his wife. And he wanted to have the blood tested on his shirt to prove that it was actually an intruder that killed his wife and not he. And that wasn't done, and trial counsel was found ineffective. Another case, Baylor v. Estelle. In that case, the rapist confessed to raping the victims. And the circuit found that because the attorney did not follow up on a report that suggested that the semen from one of the victims may have not come from him, that they were ineffective for following up in that case. And what's interesting in that case, not only did he confess, he confessed to certain parts about the crime that only the perpetrator would know. The fact that he hid the bullets underneath a cushion. So in that case, counsel was found ineffective. Okay, so here, your client's theory is not, I was there, but I didn't rape the victim. He's saying I wasn't there, correct? He did not do it. Correct, he wasn't there. He wasn't there. He didn't invade the home, didn't rob the victims. He wasn't there, period. That's his theory. All right, and there are numerous pieces of evidence that suggest that he was there. And these are all known to defense counsel at the time of trial. And he says, based on that evidence that my client was there, at this point it's all circumstantial. I can argue to a jury that there's reasonable doubt because of the factors that I do know. But if I get a DNA test and it turns out that my client's DNA is found, the victim's DNA is found on my client, then that's going to remove any of the doubt. So tactically, it's better for me to argue reasonable doubt based on the ambiguities and the circumstantial evidence, and particularly given the fact that both victims put Mr. Baker at the scene and he's found in possession of incriminating evidence later. So is this like, if the standard is it's completely and no reasonable attorney would have made this choice, how do we get there from here? The point is we have medical evidence that says she was not the rapist. Because of the points you just made? Correct. Right. And so the fact that your client is telling his lawyer I wasn't there, period, I was at the party, and there's a great deal of evidence to suggest that that's not true. I'm just trying to put myself in counsel's position, which is what we have to do. Is it unreasonable for counsel to say, you know what, I have more doubt to argue with if I don't get the test? I would agree with you, Your Honor, if it was just the client saying I wasn't there. But in this case, he had medical evidence that, in my mind, proved that he wasn't the rapist. The way that the victim described the way she was raped, the way that the SART nurse testified, what she saw on the victim, the lacerations, the blood, it was a brutal rape. And the fact that he was arrested within hours and none of her cells are found on his swabs and she was excluded from his swabs tells me enough where he did not do this crime. And with the other factors, and the fact that he's saying I didn't do it, the trial counsel should have. He was ineffective and it was unreasonable for him not to do the DNA testing. And also, the jury didn't buy or wasn't impressed with all that evidence, the other evidence you were referring to. I'm assuming you're talking about the family pack and the other evidence. The coins. The coins. Yeah. They deliberated for almost 10 hours. If that was the thing that brought the case, they would have come back with a jury verdict right away. Instead, they spent a long time going over the case, and then they asked for readbacks, focus on my client, on the identification of my client, readbacks from the victims, and also the curbside identification. So they were struggling with the identification of Mr. Baker. They weren't quite convinced that the victims had properly identified him, which means that they were struggling with this whole issue. And if they had the evidence, the medical evidence that excludes the victim from his cells, I think we would have had a different verdict. And as you know, in the record, a juror wrote to the judge twice. She said, I had reasonable doubt. Well, but maybe, you know, I realize, you know, hindsight is something that can be used to make a lot of different arguments. It may be that the trial counsel's theory that the people's case was entirely circumstantial and thus I have a lot of reasonable doubt, I can argue, that theory proved to be correct, and that's why the jury was out for as long as it was. Now, the fact that the DNA testing did not incriminate Mr. Baker is something that we know after the fact, and it's easy to look back and look at history that way. But at the time that the counsel made his tactical decision, what he said in the Marston hearing is that I can argue reasonable doubt better if I don't have blood tests, and it looks like he had some success with that. Your Honor, there were two tests. The test I'm referring to is 1999. Right, right. Okay. He had that test or should have had those test results prior to the Marston hearing. That he had in his possession. Did he use that at trial in any way? No, not at all. He didn't want to get into any of this forensic evidence. There's a second test that happened in 2006 that eliminated the victim's cells. I mean, it didn't exclude, it eliminated her. But I am focusing on what he knew at the time for this argument. I understand that we can't look ahead and find out. Did counsel make a reasonable decision based on what he knew at the time? No, not at all. I'm going back to the medical evidence. If you have medical evidence, under the past of this case, she describes the way she was brutally raped. He's arrested within hours of the rape. And these tests are taken on him, and her cells aren't found. And what's important is that these cells, these epithelial cells, are transplants with very minimal skin contact. And the cells last from two to three days. They would have been there if he had been the attacker. And that's what counsel knew. Are there any further questions? If not, I'd like to use the rest of my time for rebuttal. Thank you, sir. You've got four and a half minutes. Good morning, Your Honors. May it please the Court. I'm Geoffrey J. Cook, Deputy Attorney General for Appellee, the people of the State of California. Your Honors, this case is not about exonerating DNA evidence. As the district court found, the DNA evidence in this case is ambiguous at best. It's not like in the Baylor case, which is cited by counsel, which counsel cited, where you have a rapist who confesses and may have knowledge about the circumstances of the crime, but there's nothing else that connects him to the crime. And there's DNA evidence that says you're not the guy. In this case, there is no such DNA evidence. So I think it's unfair to characterize it as, oh, this is one of those DNA cases that perhaps the Innocent Project would be interested in, where it completely excludes this guy from having committed the crime. True, as counsel has mentioned, at the time, and speaking to your questions, Justice Fogel, Judge Fogel, as to what trial counsel knew at the time, he knew there were no epithelial cells from the penal swabs. But it's also the case that those epithelial cells last one to two days, unless you wash. This defendant is free and clear for at least a couple hours. He knows what he did. So it's not like, oh, well, because there are no epithelial cells there, that means he's excluded. No, that simply means there are no epithelial cells there. And that's what trial counsel had to deal with. As far as no blood, recall, please, that the rape occurred. I believe the record is clear that there was no blood during the rape. It was after the rape and the sodomy that occurred. The victim testified she didn't think the defendant ejaculated. There was no DNA evidence there that the blood was noted by the SART nurse and the abrasions. Truly, this was a brutal, brutal rape. But the abrasions and the lacerations, the SART nurse detected. She did so with a microscope, not just by the naked eye. And later, when the doctor, three hours later, examined the victim, he didn't note that. So I wouldn't say this is as dynamic as counsel argued. Also, Baker, the defendant, said he was innocent. Well, that's what he said. But Judge Vogel, as you mentioned, there's so much other evidence that suggests he's not. And so when his trial counsel is hearing that from him and saying, oh, you say you're innocent, okay, well, let's take a look at that. You have two eyewitnesses. Two eyewitnesses who say, that's the guy. That guy is the guy who was the person who raped Elizabeth Jay. Then we know the defendant was in the area. He was at the party at the Bahia Resort less than a mile away. Then when he's found by the police riding in his friend's car, he takes off. Then there's that whole curious circumstance when he gets off the 805 freeway and is found in the North Park community, ultimately. He gives the police a false name. He tries to bribe a neighbor, a citizen there, to hide him, give him a phone. And then he's found with all this unique stuff. And what is he found with? Well, first of all, the police, when they see him run through some apartment complexes, they follow. What do they find? A red cap that he was wearing and a fanny pack. Inside the fanny pack, a loaded firearm, some assorted change, and a watch. Now, what's significant about the watch? The watch was from the scene of the crime. It was the ruminant's watch. Now, how does a watch get from Mission Beach to North Park, about 10 miles away? How does that happen? Unless it happens because the defendant took it with him. Then when the defendant is found, he has some very unique items. He has, let's see, three silver dollars, four 50-cent pieces, some three or four Susan B. Anthony dollars, and a 50-lira Italian coin. To me, it boggles the mind to suggest that this guy isn't involved in that rape or that type of evidence. So trial counsel looks at that and goes, oh, geez, what am I going to do? Well, if I put on the DNA evidence or if I get DNA testing, I don't know what that's going to show me. But based on his trial experience and that evidence that I just mentioned, he's probably thinking, hmm, it's going to probably maybe reasonably determine that it's a match. Whereas if I don't put on the DNA evidence because the prosecution doesn't have any, then I can argue that this was poorly investigated, there's no DNA match, I can use the identification expert presented by the co-defendant saying, well, they got their identification wrong, and maybe I have a shot at it. Because if he does the DNA testing and the DNA comes back positive, there's no shot at it whatsoever. Why doesn't he use the cellular evidence? I'm with you up to this point, but counsel's point is that even at the time of trial, without any DNA testing, there is some forensic evidence that at least is arguably exculpatory. So when we're evaluating competency of counsel, what about that? Your Honor, I think he could certainly have used that if he wished. However, again, it's ambiguous evidence. It doesn't show exclusion. So as the district court judge found, yeah, he could have used it, but it really wouldn't have made a difference. And then as far as whether there's prejudice, given all that overwhelming evidence of his guilt, I don't see that at all. Now, counsel mentioned that the jury was out almost 10 hours. Well, remember that this indictment or information had about 12 different crimes, conspiracy to commit rape, robbery, burglary, forcible rape, forcible rape in concert, goes on and on, and he was tried with a co-defendant. There was a lot of material and evidence for this jury to process. But the bottom line is this is not an innocent claim that has any merit. This is not a question where this individual had nothing to do with this crime. He had everything to do with the crime, because the evidence says he did, and that was what the trial counsel had in mind when he made the decision. So, Your Honors, I think the judgment should be affirmed. And unless the Court has any questions, I'd be happy to sit down and recommend. Thank you, Your Honor. Thank you. Rebuttal? Yes, Your Honor, just a few points. My client was seen by police officers within 11 minutes of the initial phone call, so there was no time for him to wash or anything to suggest that he'd like to weigh any of the evidence. Also, the victim testified she was bleeding right away. I don't think the evidence was that she bleeded at some point later. She was barely raped. She gets up. She looks. She's bleeding. So she was bleeding. And those are just the two points I wanted to make in rebuttal. And the Court has any other questions? I don't think so. Thank you. And thank you for bringing us in earlier. It was good for me.
judges: Pregerson, Thompson, Fogel